IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ABRET NEURODIAGNOSTIC CREDENTIALING AND ACCREDITATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> JENNIFER VIERKANT OWENS, <br><br> Defendant. | Civil Action No:_____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, ABRET Neurodiagnostic Credentialing and Accreditation, Inc. ("ABRET"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

### INTRODUCTION

1. This is a civil action for copyright infringement, trade secret misappropriation, and breach of contract. Plaintiff ABRET is a nonprofit credentialing board for neurodiagnostic technologists. ABRET brings this action against Jennifer Vierkant Owens ("Owens"). With respect to the copyright infringement claim, Owens, by copying and disseminating ABRET's secure exam questions, infringed ABRET's registered copyrights. With respect to the misappropriation of trade secrets claim, Owens, while under contract with ABRET as an exam reviewer, was given limited access to certain valuable ABRET trade secret information and shared such trade secrets with third parties (including at least three candidates preparing to sit for the exam) in violation of exam security protocols and without authorization. With respect to the

breach of contract claims, by distributing ABRET's confidential information to third parties without ABRET's consent, using ABRET materials for purposes unrelated to Owens's scope of authority (*i.e.*, examination development and review), and failing to report the breaches to ABRET, Owens breached express contractual duties and her duty of care owed to ABRET.  ABRET now seeks injunctive relief, damages, and other relief, including attorneys' fees and costs.

## THE PARTIES

2. Plaintiff ABRET is a not-for-profit corporation of the Commonwealth of Virginia with its principal place of business at 111 East University Drive, # 105-355, Denton, Texas 76209.

3. Defendant Jennifer Vierkant Owens is a resident of, and domiciled in, Washington County, Minnesota.

## JURISDICTION

4. This action arises under the federal Copyright Act, 17 U.S.C. § 101, *et. seq.*, and under the laws of the State of Minnesota, both statutory and common law.  Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331, 1338(a), and 1367.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff resides in Texas and Virginia, Defendant resides in Minnesota, and the amount in controversy exceeds $75,000.

5. This court has personal jurisdiction over Defendant, and venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant is domiciled in this District and has committed acts in this district or directed at this district constituting or contributing to the infringement, trade secret misappropriation, and breach of contract alleged, so that a substantial part of the acts and events giving rise to the claims occurred in, or were directed at, this judicial district.

**FACTS**

**I.      ABRET's Secured Examinations**

6.      For almost 60 years, ABRET has developed and administered examinations for the purpose of credentialing and accrediting technologists to work in the field of neurodiagnostics. Today, ABRET administers seven different examinations to credential technologists for various positions in the neurodiagnostic field.

7.      The credentialing value of ABRET's examinations depends on their reliability, accuracy, and security. Hospitals and other health care organizations require ABRET certification for employees to hold certain positions and take on certain responsibilities because they believe that technologists will not have access to ABRET examination questions prior to the examination, ensuring that ABRET examination will accurately gauge technologists' proficiency in neurodiagnostics.

8.      ABRET's examinations are demonstrably objective and unbiased in order to serve their purpose, which is to function as a nationwide standard for proficiency in neurodiagnostic technology.

9.      ABRET's examinations are created through a long and intensive collaboration and review process to ensure that relevant topics and sub-topics are accurately, adequately, and proportionately tested in a normative and non-biased manner. This process is resource-intensive and costs hundreds of thousands of dollars.

10.     To enable variation from one administration of a given examination to the next, ABRET creates and maintains a database or "bank" of test items for each of its examinations, from which ABRET selects a subset of test items for each administration of that examination. A "test item" is a unit consisting of a question (or "stem"), the correct answer to that question, any

incorrect answer choices (or "distractors"), and any associated material, such as a narrative passage or diagram.

11. ABRET identifies and contracts with a select number of highly qualified neurodiagnostic technologists, known as subject matter experts ("SMEs"), to assist with examination development. SMEs both write test items and vet test items to ensure that they are properly calibrated to test accurately for the required level of proficiency.

12. To maintain the security of its test items, ABRET requires every SME who participates in developing ABRET examinations to sign an "Item Writer, Examiner, Reviewer Agreement" (the "WER Agreement"). Among other provisions, the WER Agreement establishes that all test items and other examination materials are confidential and proprietary to ABRET, obligates the SME to maintain the security and confidentiality of the examination materials to which they have access, prohibits the SME from making or keeping copies of such materials and from sharing them with any third party without ABRET's written permission, and requires the SME to report to ABRET any violation of the confidentiality or security of the examination materials to which they have access.

13. As a result of the rigorous development process, the creation of an ABRET examination test bank is a highly technical, costly, and time-consuming endeavor, which results in a highly valuable finished product.

14. ABRET's newest credential is the NeuroAnalyst-Certified Long Term Monitoring ("NA-CLTM") technologist certification. NA-CLTM is ABRET's most rigorous and highest-level credential, and it has helped to establish and validate an advanced level of practice for neurodiagnostic technologists within the neurology community. ABRET developed the NA-CLTM test bank over a three-year period from 2018 to 2021 with input from expert CLTM

technologists and physicians board certified in epilepsy and clinical neurophysiology. ABRET administered the NA-CLTM examination for the first time in August 2021.

15. ABRET is the author and copyright owner of all test items in the NA-CLTM test bank. All NA-CLTM test items were created by ABRET board members or by contractors engaged by ABRET to create test items as works made for hire pursuant to 17 U.S.C. § 101 et seq.

16. ABRET is the owner of U.S. Copyright Registration No. TXu002379801 covering the NA-CLTM test bank (constituting 281 test items), which it obtained using the U.S. Copyright Office's procedures for Group Registration of Secure Test Items. Under such procedures, an applicant must schedule an interview with a registration specialist to inspect the test items to be registered under secure conditions. In lieu of complete deposit materials, Group Registration of Secure Test Items procedures require deposit of only heavily redacted versions of the test items.

II. **Defendant's Involvement in the Creation of the NA-CLTM Examination**

17. Defendant Owens is a neurodiagnostic technologist. On October 12, 2020, ABRET contracted with Owens to serve as an SME to write and review test items for the NA-CLTM, which was then in development. Owens executed the WER Agreement on or about October 12, 2020.

18. Under the WER Agreement, Owens was provided the entire NA-CLTM test bank for review and evaluation. Specifically, on January 9, 2021, ABRET provided Owens with temporary, and secure, electronic access to certain NA-CLTM test items for review and evaluation. Owens completed her review of these test items within four hours, at which time ABRET disabled her secure access to those test items. Subsequently, on March 4, 2021, ABRET provided Owens with temporary, and secure, electronic access to additional NA-CLTM test items for review and evaluation. Owens completed her review of these test items within four days, at which time ABRET disabled her secure access to these test items.

### III. Defendant's Unauthorized Copying and Distribution of ABRET's Copyright-Protected Works

19. While she had temporary and secure electronic access to ABRET's test items, Owens willfully, knowingly, and intentionally created unauthorized copies of NA-CLTM test items by taking screenshot captures on her computer and/or by taking photographs of her computer monitor.

20. Owens subsequently willfully, knowingly, and intentionally distributed copies of ABRET's secure, copyright-protected test items to neurodiagnostic technologists who were preparing to sit for ABRET's NA-CLTM examination. To date, ABRET is aware of at least three technologists who received copies of ABRET's secure NA-CLTM test items from Defendant.

21. By photographing and taking screenshot captures of ABRET's copyright-protected test items, Owens willfully, knowingly, and intentionally infringed ABRET's registered copyright.

22. By distributing unauthorized copies of ABRET's copyright-protected secure test items, Owens willfully, knowingly, and intentionally infringed ABRET's registered copyright.

### IV. Defendant's Misappropriation of Trade Secrets

23. ABRET spent many years and devoted substantial financial and human resources to develop the NA-CLTM exam test bank. It is the only examination of its kind, and for those who pass, the resulting certification indicates that they have achieved the highest certification in the neurodiagnostic technologist field. It is considered proof of significant and specialized knowledge and training and is required by numerous hospitals and other health care providers for employees to hold certain positions.

24. ABRET has taken extensive measures to protect the confidential and trade secret nature of the NA-CLTM test bank, test items, and specific examinations, including but not limited to: (a) requiring all SMEs, vendors, and others working on the exam to execute the WER Agreement or similar confidentiality, work for hire, and assignment agreements; (b) providing test

items to SMEs only through secure and time-limited electronic access; (c) applying to register the test items with the U.S. Copyright Office using secure exam protocols; (d) requiring test-takers to accept an application agreement to refrain from copying, disseminating, or divulging any test items; and (e) carefully proctoring test-takers while they are taking the exam.

25. The NA-CLTM test items include original, carefully crafted, and fully vetted questions and correct answers. They also include extensive original, carefully crafted, and fully vetted incorrect responses (known as "distractors"), which allow ABRET to thoroughly test the scope and depth of a candidate's knowledge of the subject matter. None of this information is made available to the public in any manner. If this information were available to or readily ascertainable by the public, particularly neurodiagnostic technologists preparing to take the NA-CLTM exam, it would lose its value as a reliable means to evaluate candidates' knowledge, and consequently, it would lose its economic value to ABRET.

26. The disclosure of ABRET's confidential and trade secret information, which it has maintained as confidential or trade secret, has caused and will continue to cause severe economic harm to ABRET.

27. The disclosure of ABRET's confidential and trade secret information, which it has maintained as confidential or trade secret, has caused and will continue to cause significant reputational harm to ABRET.

28. In addition, the public is harmed because (i) there may now be neurodiagnostic technologists working with patients who cheated on the NA-CLTM exam and would not have passed but for Owens's actions and (ii) legitimate candidates cannot sit for a NA-CLTM exam because ABRET has been forced to indefinitely postpone administration of this exam, creating a hardship for those candidates and a market shortage of neurodiagnostic technologists who hold this credential.

29. As more fully described above and below, Owens obtained access to the confidential and trade secret information as an SME who executed the WER Agreement and was provided NA-CLTM test items to review. By making and retaining copies of ABRET's confidential and trade secret information in knowing violation of the WER Agreement, Owens used improper means to acquire ABRET's trade secret information. Owens disclosed ABRET's trade secret information without ABRET's express or implied consent when she knew or had reason to know that it had been acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

30. In May and June 2023, ABRET discovered that Owens had unlawfully, knowingly, and maliciously misappropriated ABRET's confidential and trade secret information and disseminated it to third parties.

### V. Defendant's Breach of Contractual Duties Owed to ABRET

31. As a condition of her engagement as an SME, Owens signed ABRET'S WER Agreement, which states in relevant part:

> I understand that in the course of my duties for ABRET, I may have access to examination items, passing point studies, and other examination materials ("Exam Materials") . . . (collectively referred to as "Confidential Information"). I agree to maintain Confidential Information in strict confidence. I shall not share Confidential Information with any third party without written permission from ABRET. . . . I understand that I must maintain the confidentiality of all Confidential Information until it is made public by ABRET or until I receive written permission from ABRET to release it to a third party, whichever occurs first. . . . Exam Materials are the sole property of ABRET and constitute Confidential Information. I shall not use Exam Materials in any way except as necessary to carry out my work in the examination development . . . process. . . . Upon conclusion of my work, I shall promptly return to ABRET all documents, paper, and electronic files, computer disks, and other items containing any Exam Materials or other Confidential Information, without making or keeping any copies, excerpts, or notes. . . . I shall immediately notify ABRET if Confidential Information is stolen or lost, or if an unauthorized party has gained access to Confidential Information in my possession. . . . The Exam Materials, including exam items and other materials contributed by me are a "work made for hire" under United States copyright law. ABRET will be the exclusive owner of all copyright and proprietary rights to the Exam Materials. If the Exam Materials do

not constitute work made for hire as a matter of law, I hereby transfer and assign all rights in such Exam Materials to ABRET. I shall provide any further documentation of these transfers that ABRET requests. . . . I understand and agree that if I violate this agreement, ABRET is entitled to injunctive relief, attorneys' fees, and/or other equitable relief (in addition to all other available remedies at law) to prevent or otherwise restrain a material breach of this agreement.

(ABRET Item Writer, Examiner, Reviewer Agreement signed by Jennifer Vierkant Owens, attached as Exhibit A.)

32. Rather than complying with her contractual obligations to ABRET, Owens knowingly and intentionally failed to "return to ABRET all documents, paper, and electronic files, computer disks, and other items containing any Exam Materials or other Confidential Information." To the contrary, despite clear contractual obligations to refrain from making any reproductions ("without making or keeping any copies, excerpts, or notes"), Owens made and kept copies of ABRET's Exam Materials and Confidential Information, in material violation of her obligations under the WER Agreement.

33. Owens subsequently willfully, knowingly, and intentionally shared ABRET's Confidential Information with multiple third parties without written permission from ABRET to do so.

34. Moreover, Owens knew that unauthorized parties had gained access to ABRET's Confidential Information in her possession, yet she failed to notify ABRET, in material violation of her obligations under the WER Agreement.

35. By retaining copies of ABRET's Confidential Information after the conclusion of her work on the NA-CLTM examination, Owens knowingly and intentionally materially breached the WER Agreement.

36. By sharing ABRET's Confidential Information with third parties without ABRET's written authorization, and by failing to notify ABRET that third parties had obtained

9

access to its Confidential Information, Owens knowingly and intentionally materially breached the WER Agreement.

## VI. Harm to ABRET

37. As a result of Owens's willful, knowing, and intentional unlawful activities, and to maintain the integrity of the standardized testing process, ABRET has been forced to postpone the scheduled July 2023 administration of the NA-CLTM examination.

38. As a result of Owens's willful, knowing, and intentional unlawful activities, ABRET has been forced to incur significant costs associated with investigating and mitigating the damage caused by Owens's actions, including without limitation preparing and sending a letter to SMEs and test development committee members who were involved in the creation of the NA-CLTM.

39. ABRET continues to investigate the extent to which its NA-CLTM test bank has been compromised and to evaluate whether any of the test items in the NA-CLTM test bank remain usable. ABRET currently anticipates that it may need to postpone or cancel the Fall 2023 NA-CLTM examination, and it may ultimately need to retire the entire NA-CLTM test bank and begin the three-year development process anew. ABRET urgently requires full information about the extent of Owens's copying and dissemination of NA-CLTM test items to enable ABRET to assess and attempt to mitigate the harm caused by her actions.

40. ABRET contacted Owens and her counsel in an attempt to obtain the information it requires regarding the extent of her copying and dissemination of NA-CLTM test items, and to resolve this matter without litigation, but Owens declined to fully cooperate.

41. As a result of Owens's willful, knowing, and intentional unlawful activities, ABRET must bear the expense of creating replacement test items, and potentially an entire replacement test bank.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Federal Copyright Infringement Under 17 U.S.C. § 101 et seq.

42. ABRET repeats and realleges each and every allegation set forth in this Complaint.

43. ABRET is the author and owner of the NA-CLTM test items and the owner of U.S. Copyright Registration No. TXu002379801 therefor.

44. Without authorization, Owens reproduced and disseminated ABRET's copyright-protected NA-CLTM test items and in doing so infringed ABRET's copyrights.

45. Owens's actions constitute copyright infringement in violation of 17 U.S.C. § 501(a).

46. As a direct and proximate result of the Defendant's actions, ABRET has suffered monetary damages in an as yet undetermined amount.

47. As a direct and proximate result of the Defendant's actions, ABRET is entitled to injunctive relief.

### SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### Under Minn. Stat. Ch. 325C (2022)

48. ABRET repeats and realleges each and every allegation set forth in this Complaint.

49. ABRET's confidential information, including the NA-CLTM test bank and test items, is trade secret and proprietary information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

50. ABRET's confidential and trade secret information has been and continues to be the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

51. Owens willfully, knowingly, and maliciously accessed, misappropriated, and disseminated ABRET's confidential and trade secret information by abusing her position as a SME and in violation of the WER Agreement. Owens used improper means to acquire ABRET's trade secret information and then disclosed that information without ABRET's express or implied consent when she knew or had reason to know that it had been acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

52. As a result of Owens's willful, knowing, and malicious misappropriation, ABRET has been and continues to be damaged and irreparably injured, including without limitation, by the loss of sales and profits it would have earned but for Defendant's actions, and by damage to ABRET's reputation among potential and existing customers, business partners, and in the health care industry in general.

53. Owens's misappropriation is knowing, willful, and malicious, entitling ABRET to an award of exemplary damages.

54. Owens's misappropriation of ABRET's confidential and trade secret information has caused and will continue to cause ABRET irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Owens from further use or disclosure of ABRET's confidential and trade secret information is necessary to provide ABRET with complete relief.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract Under Minnesota State Law**

55. ABRET repeats and realleges each and every allegation set forth this Complaint.

56. Owens signed ABRET's WER Agreement on or about October 12, 2020.

57. The WER Agreement obligated Owens to return all copies of ABRET's Confidential Information upon conclusion of her work without retaining any copies; to refrain

from "making or keeping any copies, excerpts, or notes"; to refrain from sharing ABRET's Confidential Information with third parties without ABRET's written authorization; and to notify ABRET immediately if any third party gained access to ABRET's Confidential Information in her possession.

58. By retaining copies of ABRET's Confidential Information (including NA-CLTM test items), making and keeping copies, excerpts, or notes, sharing that Confidential Information with unauthorized third parties, and failing to notify ABRET of the third parties' access, Owens knowingly, intentionally, and maliciously breached her obligations under the WER Agreement.

59. Owens materially breached the WER Agreement.

60. As a direct and proximate result of the Defendant's actions, ABRET has suffered monetary damages in an as yet undetermined amount.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, ABRET respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, ABRET requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. An Order requiring Defendant to respond to expedited discovery to enable ABRET to assess and attempt to mitigate the harm caused by Owens's actions; specifically, ABRET requests that the Court order Owens to immediately disclose to ABRET:

> 1. A complete list of all ABRET test items and other Confidential Information of which she ever created or possessed unauthorized copies, together with copies of the same;

2. The name and contact information for each individual to whom Owens distributed an unauthorized copy of any of ABRET's test items or other Confidential Information, including which materials each individual received;

3. The name and contact information for each individual whom Owens knows, has reason to know, or believes ever received an unauthorized copy of any of ABRET's test items or other Confidential Information, including, to the extent known, which materials each individual received; and

4. A complete accounting of any compensation or other benefit that Owens received in consideration or exchange for dissemination of ABRET's test items or other Confidential Information;

B. An Order enjoining Defendant from any further copying or dissemination of ABRET's copyright-protected test items, in accordance with 17 U.S.C. § 502;

C. An Order enjoining Defendant from any further misappropriation or dissemination of ABRET's proprietary trade secret information, in accordance with Minn. Stat. Ch. 325C.02;

D. An Order enjoining Defendant from any further dissemination of ABRET's Confidential Information subject to the WER Agreement;

E. An Order requiring that Defendant destroy or return to ABRET any copies in her possession or control of ABRET's copyright-protected test items, in accordance with 17 U.S.C. § 503;

F. An Order requiring that Defendant destroy or return to ABRET any copies in her possession or control of ABRET's proprietary trade secret information, in accordance with Minn. Stat. Ch. 325C.02;

G. An Order requiring that Defendant destroy or return to ABRET any copies in her possession or control of ABRET's Confidential Information subject to the WER Agreement;

H. An Order requiring Defendant to pay ABRET any profits realized by Owens as a result of her infringement of ABRET's copyright, as well as ABRET's actual damages, in an amount to be determined, caused by the foregoing acts, in accordance with 17 U.S.C. § 504 and other applicable laws;

I. An Order requiring Defendant to pay ABRET any profits realized by Owens as a result of Owens's trade secret misappropriation as well as ABRET's actual damages, in an amount to be determined, caused by the foregoing acts, in accordance with Minn. Stat. Ch. 325C.03(a) and other applicable laws;

J. An Order requiring Defendant to pay ABRET exemplary damages as a result of Owens's willful and malicious trade secret misappropriation, in an amount to be determined, caused by the foregoing acts, in accordance with Minn. Stat. Ch. 325C.03(b) and other applicable laws;

K. An Order requiring Defendant to pay ABRET damages resulting from Owens's breach of the WER Agreement, in an amount to be determined, including, without limitation, compensatory and consequential damages as provided by law;

L. An Order requiring Defendant to pay ABRET punitive damages, as permitted by law, in an amount to be determined, due to the foregoing willful acts;

M. An Order requiring Defendant to pay ABRET its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505, Minn. Stat. Ch. 325C.04(iii), the agreed contract provisions between ABRET and Owens, and/or other applicable laws;

N. An Order granting ABRET pre- and post-judgment interest as permitted by law; and

O. Other relief as the Court may deem appropriate.

Dated:  July 31, 2023

**MADEL PA**

*/s/ Christopher W. Madel*
Christopher W. Madel (230297)
800 Hennepin Ave.
800 Pence Building
Minneapolis, MN 55403
Phone: (612) 605-0630
Fax: (612) 326-9990
cmadel@madellaw.com

Margaret A. Esquenet (*pro hac vice* to be filed)
**FINNEGAN, HENDERSON, FARABOW,**
   **GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Phone: (202) 408-4000
Fax: (202) 408-4400
margaret.esquenet@finnegan.com

Jenevieve Maerker (*pro hac vice* to be filed)
**FINNEGAN, HENDERSON, FARABOW,**
   **GARRETT & DUNNER, LLP**
Two Seaport Lane, 6th Floor
Boston, MA 02210-2001
Phone: (617) 646-1600
Fax: (617) 646-1666

*Attorneys for Plaintiff*

16